I believe Governor Sperry stated much of what I recall, you know, in his statement this morning. So, I'd rather reserve about half the time I have for this formal model. I believe your Honor, that this is what the case should show. The conduct that I have seen in the past in this collegiate system, what we've been seeing online, I think the court's ruling on this expertise is important because that's a message to us, to us as a faculty, of what we expect from our police officers. You know, in any kind of studies, the idea is to protect and serve. It's the concept of using reasonable force, not unreasonable force, to detain suspects, because that's what they are. They're not being convicted. They're not suspects. They're not alleged. They're a presumption of honor. That determination can't be made. So, police officers are putting some weight to their judgment to decide what is appropriate. In our case, this report may have some fundamental errors, and the first is that this report is humorous. It has 15 different photographs in its order. One image is humorous. The second image is of a cardboard, and three cardboard images. It's important to acknowledge that it's more than just two words in the phone book. It speaks a lot about the fact that it's more significant than it truly conveys in and of itself the credibility of the institution. That the conduct of our social exercise, in this case, to a lot of people, is significant on its own. It orders us to decide that this court enables conduct to be called conduct, whether or not these claims were not credible, whether or not people believed. It is, of course, stated that there must be contradictive other measures, other testimony, other evidence. In order for dispositives to bridge the gaps in your evidence, the problem with the image that the next court ruled on was the statement of a fellow officer, who, by the way, in this deposition, it is in the US. It is in a country. You must change the medical records. There's a four-volume medical record in this court. It's the $100 version of the evidence. We agree that this court, the medical record, will not show actual injury. It will not be able to indicate actual injury. It's your final decision. You're sitting on the floor. We believe the pressures of the case would allow the subpoena to survive. And the things that, of course, could be described would allow them to survive. And it's the response of the officer to the subpoena testimony. We believe that conduct can be encouraged, and that can be also avoided. It's just a matter of questions. And it's a matter of questions. It's a matter of questions. It's a matter of questions. It's a matter of questions. It's a matter of questions. And also, we are accepting the case. Mr. Cable made a claim for an actual injury. They're not acceptable evidence for a state of disorder that somehow is tied to the case together. That's a possible extension. Especially if you have a substituted individual, if you allow such testimonies to be used again to imply or affirm that he's worth remembering. The defense in this case did not consider, in that brief, that he renounced all other claims for the threat he was setting to the police years later. He was no longer emotionally distressed. He was angry. In fact, Mr. Cable, to the question, he was emotionally distressed at the age of 13 years after his conviction. Mr. Cable made a claim in December.  I don't know. When the decision was made, was there a decision made that the attorney was not going to take the case? No. In fact, in response to the first question, there was a question that the state of the defense, the police, the FBI, all of the state of the defense, kind of played out our own conspiracy to take the case. As you point to, I think it's unlikely that he wants to be a controversial figure in the past. That's my speaker, the one that we've been using for a long time. The Triple H has been great in that it has been very positive. I think that's certainly something. The controversies against us are far less offensive, if you think нельзя. Immediately after he was sentenced in July of 1934, our response in 2014 was not to tease, but for tease, we're attempting to alter the nature of Jim's surgery that's going on. We've had a group of engineers, who are now nurses, who are looking at the issues. Some of them had questions about the difficulty in the nature of Jim's surgery that's going on, which we agree that there's no medical evidence to show actual evidence from injuries in the tertiary ward, but I think we were, even after he was sentenced, we were able to see a lot of the traits that Jim's surgery may be, but it goes down to, you know, the dimensions for injury at the tertiary ward, which, at the moment, I just don't see a very good response there. I'm sorry if you're still interested in that. Well, Your Honor, I can't go to a conference here that I'm supposed to be in, but the overall evidence in the record regarding Mr. Cable's testimony and his communication, just because he's not saying actual things, or the injury, or the head-to-head connection with the police cruiser or the handcuffs being put on too tight, doesn't mean he's not entitled to this sort of statute of limitations that we're giving him. It's just a little bit, for me, just a little bit, but I can't tell you how much I hate it. It's just, I don't get it. It's just, I always have something to tell her, but this is totally unrelated. It's the court. It's the court. So, just in fact, he may, of course, he may, in fact, even if there's no actual damages, he should at least receive six or four slaps because there can be no more nominal damages. Absolutely, Your Honor. I believe that, while I did not have any results on the substance used on him in this case, I believe there was a catch-all of whatever motive or report he filed, and I believe that would encapsulate the nominal damages that's available to the plaintiff in this case. So, please, Your Honor, I would like you to assume there are no nominal damages, no actual damages. This time, does your client have a right to a commentary, please? What we would require, depending on the report, depending on the findings of the jury, whether they found Officer Tony's conduct to be a successful force or a deceptive force, we believe that he should receive a commentary that that would re-evaluate the discretion of the court and would be available in the court's honor. I believe that's a great question for our jury to use with a court of nominal damages. But I believe, depending on whether the damages were $0 or $5,000, I think, in total, or whether it was a cease-and-desist payment, a nominal damage would probably be $1,000. So, we don't know what it comes toward, but even at this stage, we're just trying to to put a simple judgment and put the issues to a jury. Absolutely. And, Your Honor, we'll always sort of take it as we can work with medical records. I hope that's what we can do in terms of medical records. The Officer Tony actually received his deposition in May, that he received in a car arrest where he was put in a direct possession of a cheap machine called a PCC. As you can see, there's no dispute that Mr. Tony would have an existing smile. He never deceived in that and it's not relevant to whether the medical record has a legal basis for that. That's a big rationale in this case. And, why would that be required or not? And, if their answer is sort of what I think was problematic in the first and second time that they came to this context and didn't come from a medical record or a social security record, but if their answer is the conclusion that they complained about it on January 1st, so their most recent case deposition could be the answer to that question. On January 24th, which is just a few weeks later, a doctor, Dr. Lucera, determined that this was not a correct response. We may not be able to prove that this is a complete condition based on the medical cost of surgery and medical care. But, on January 22nd, a doctor was determined that the medical cost and the complications of her most recent case was a house disability case that goes to the credibility of whether this was actually happened. Dr. Epson, who is a     of New York, was determined that this was not a complete condition based on the medical cost of surgery and medical care. Dr. Epson was determined that this of surgery and  care. Dr. Epson was      a complete condition based on medical care. Dr. Epson was determined that this was not a complete condition based on the medical  of surgery and  care. not  complete condition based on of surgery and care.     this was not a was not a complete    medical of surgery as not a complete condition complete medical of surgery based on the medical
judges: Fernandez, Gould, Friedland